IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON


YVETTE DUBOIS,                          :

      Plaintiff,                    :        Case No. 3:09cv00230

 vs.                                    :        District Judge Walter Herbert Rice
                                              Magistrate Judge Sharon L. Ovington

ARTHUR PICKOFF, MD,                     :

      Defendant.                    :


## REPORT AND RECOMMENDATIONS[1]


## I.     Introduction

Plaintiff Yvette DuBois, a former medical resident at Wright State University,

wants to become Board Certified by the American Board of Preventative Medicine (the

Board).  She has applied twice to sit for the Board's certification exam, but the Board has

twice denied her permission to take it.  One alleged reason, perhaps among several, was

that Defendant Arthur Pickoff, MD, "a management official of Wright State University..."

(Doc. #1 at 1) informed the Board that Plaintiff did not complete the clinical requirements

of her residency program at Wright State University.

Plaintiff brings the present case under 42 U.S.C. §1983 asserting that Dr. Pickoff's

purported statements to the Board violated her rights under the First, Fifth, and

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

Fourteenth Amendments to the United States Constitution.  Plaintiff's original Complaint

seeks to recover damages from Dr. Pickoff – and no one else.  Plaintiff's Complaint seeks

damages to compensate her for, in part, lost job opportunities, harm to her reputation, and

adverse health problems.

The case is presently before the Court upon the Plaintiff's Motion to Add Party

Defendants/Amend Complaint *Instanter* (Doc.#10), Defendant's Memorandum in

Opposition (Doc. #11), Plaintiff's Reply (Doc. #13), and the record as a whole.

## II.    Background

Plaintiff attended Wright State University School of Medicine for her residency in

the Department of Aerospace Medicine from 1998 to 2000.  One of the residency

requirements involved a rotation at the Civil Aeromedical Institute (CAMI).  In order to

complete her rotation at CAMI, Plaintiff was required to produce a paper.  Plaintiff

explains in her Complaint that she "completed the paper during the rotation but requested

that it not be published because the subject matter involved neurological issues more

appropriate for a board certified neurologist with regard to making recommendations to

the aeromedical community."  (Doc. #1 at 2).

Repercussions later arose when Plaintiff learned that her decision to keep her paper

unpublished meant – in the eyes of Wright State University –  that she had not fulfilled all

the requirements needed to complete her residency program.  This, in turn, caused the

Board to deny her permission to sit for the certification exam, thus defeating her effort to

become Board Certified in preventative medicine.

Plaintiff maintains that, at the end of her residency in 2000, she believed she had completed all her residency requirements.  She alleges that Dr. Pickoff did not inform her during or after her residency that her request not to publish her paper would prohibit her from completing the rotation requirements.

"Plaintiff was subsequently coerced into granting permission to publish the paper. However, along with granting permission, the Plaintiff voiced concerns, some of which were ethical."  (Doc. #1 at 2).

Plaintiff alleges that Dr. Pickoff "engaged in intentional, willful and wanton misconduct that was also retaliatory and in violation of 42 U.S.C. §1983."  (Doc. #1 at 3). Plaintiff claims that Dr. Pickoff violated her rights under the First Amendment by forcing her to speak – i.e., forcing her to publish her paper – under circumstances she opposed and by denying her the chance to take the Board's certification exam.  Plaintiff also claims that Dr. Pickoff violated her constitutional rights to (1) to substantive due process, (2) to procedural due process, (3) to the privileges and immunities granted her as U.S. citizen, and (4) to equal protection.

III.    **Discussion**

A.    **Plaintiff's Contentions**

As noted above, the sole Defendant in this case is Dr. Pickoff.  The caption of Plaintiff's Complaint indicates she raises claims against Dr. Pickoff "in his individual

capacity." (Doc. #1 at 1).

Plaintiff seeks to amend her Complaint by adding three new defendants:  Howard Part, Robin Dodge, MD, and Farhad Sahiar, MD.  Plaintiff contends that each proposed new defendant is a proper party in this case because each played a part in denying, or continuing to deny, her the chance to sit for the Board's certification exam.  And each, therefore, according to Plaintiff, violated her constitutional rights.

Plaintiff also seeks to amend the relief she seeks in her Complaint by adding to her prayer for relief a request for a mandatory injunction.  The mandatory injunction she seeks, if issued, would compel Dr. Pickoff, Howard Part, Dr. Dodge, and Dr. Sahiar to permit Plaintiff to take the Board's certification exam.

Dr. Pickoff argues that Plaintiff's Motion to Add Party/Defendants and Amend Complaint lacks merit because her proposed Amended Complaint (1) is barred by the applicable two-year statute of limitations, (2) does not relate back to her original Complaint, and (3) is untimely under the Court's Scheduling Order.

### B.      Leave to Amend – Rule 15

"Pursuant to Fed. R. Civ. P. 15(a), a court should freely give leave to amend a complaint 'when justice so requires.'  However, leave to amend may be denied where the amendment would be futile."  *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 569 (6th Cir. 2003)(citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

Futility exists here, insists Dr. Pickoff, because the applicable two-year statute of

limitations bars Plaintiff's claims against the proposed new defendants.

Dr. Pickoff is correct in his recognition that a two-year statute of limitations applies to Plaintiff's §1983 claims against the proposed new defendants. *See Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003); *see also Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989). When, then, did the clock begin to run on this two-year limitations period?

The statute of limitations ordinarily "starts to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Kuhnle Bros., Inc. v. County of Geauga,* 103 F.3d 516, 520 (6th Cir. 1997). The precise starting date hinges on the "event [that] should have alerted the typical lay person to protect his or her rights." *Eidson v. State of Tennessee Dept. of Children's Services*, 510 F.3d 631, 635 (6th Cir. 2007) (quoting *Kuhnle Bros*., 103 F.3d at 520; other citations omitted).

The parties do not appear to disagree over the date – August 17, 2007 – when the two-year statute of limitations began to run. On this date, as indicated in Plaintiff's proposed Amended Complaint, she first learned that the Board's decision not to allow her to take the certification exam was based on information Dr. Dodge had provided – mainly, that Plaintiff had not completed the clinical requirements of her residency program. Knowing this much on August 17, 2007, Plaintiff knew, or a lay person in Plaintiff's position would have reasonably known, it was time to protect her constitutional rights.

Adding two years to the August 17, 2007 accrual date, the statute of limitations

applicable to Plaintiff's claims against Howard Part, Dr. Dodge, and Dr. Sahiar expired

on August 17, 2009.  Yet Plaintiff did not file her Motion to Add Party/Defendants and

Amend Complaint until April 2010, long after the two-year limitations period had

expired.  As a result, her claims against the proposed new defendants are time barred.

Without something more, then, it would be futile for Plaintiff to amend her Complaint as

she proposes.  Something more does indeed exist: Fed. R. Civ. P. 15(c).

Plaintiff argues her claims against the proposed new defendants relate back to her

initial Complaint and therefore are timely under Rule 15(c).  Dr. Pickoff contends

otherwise, for reasons to be discussed.

"[T]he thrust of Rule 15 is to reinforce the principle that cases 'should be tried on

their merits rather than the technicalities of pleadings....  Thus, a court will permit a party

to add even a new legal theory in an amended pleading as long as it arises out of the same

transaction or occurrence." *Miller v. American Heavy Lift Shipping*, 231 F.3d 242, 248

(6th Cir. 2000).  Plaintiff does not seek leave to raise a new legal theory in her proposed

Amended Complaint.  Her goal instead is to timely raise the same legal theories already

present in her Complaint against additional defendants – Howard Part, Dr. Dodge, and

Dr. Sahiar.  To accomplish this addition of parties in a timely manner, Plaintiff's

proposed Amended Complaint must relate back to her original Complaint, as permitted by

Rules 15(c)(1)(B)  and 15(c)(1)(C).

Rule 15(c)(1)(B) provides, "An amendment to a pleading relates back to the date

of the original pleading when ... the amendment asserts a claim or defense that arose out

of the conduct, transaction, or occurrence set out – or attempted to set out – in the original pleading."

Rule 15(c)(1)(C), "addressing changes to a party or 'the naming of a party,' states that an amendment relates back if the provisions of [Rule 15(c)(1)(B)] are satisfied, the defendant received notice of the suit within 120 days following the filing of the original complaint, the notice was such that the defendant 'will not be prejudiced in maintaining a defense on the merits,' and the defendant 'knew or should have known that but for a mistake concerning the identity of the proper party, the action would have been brought against the party.'" *Moore v. City of Harriman*, 272 F.3d 769, 774 (6th Cir. 2001)(internal citations omitted).

Plaintiff's claims against the proposed new defendants arose out of the same conduct, transaction, or occurrence she described in her initial Complaint. According to the proposed Amended Complaint, Dr. Dodge first informed the Board that she had not completed her clinical requirements for residency training. Although Dr. Dodge later informed the Board that Plaintiff had in fact completed her clinical requirements, Dr. Dodge informed the Board that Plaintiff had not completed a thesis. (Doc. #10 at 43). In addition, Plaintiff's proposed Amended Complaint asserts, "Defendants authorized, condoned and ratified the decision." (Doc. #10 at 43). These allegations tie each proposed additional defendant to the same wrongdoing – the same conduct, transaction, or occurrence – discussed in Plaintiff's original Complaint. Both pleadings concern alleged communications to the Board by Wright State University officials or personnel at

or near the same time Plaintiff was applying to sit for the certification exam.  Those communications were allegedly sufficient to convince the Board – on the same dates in June 2007 and August 2007 – that Plaintiff had failed to complete her residency requirements and was therefore ineligible to sit for the certification exam.  Plaintiff's proposed Amended Complaint thus relates back to her original Complaint as permitted by Rule 15(c)(1)(B).

In addition, assuming the allegations of the Complaint are true, the mandatory injunctive relief Plaintiff presently seeks to add is based on the same conduct, transaction, or occurrence discussed in the original Complaint.  Two proposed new defendants, Howard Part and Dr. Sahiar, if not Dr. Dodge also, appear to hold the authority to reverse the decision that Plaintiff has not completed all her residency requirements, to find that Plaintiff has completed all the residency program requirements, and to inform the Board of her accomplishment.  Howard Part's authority to take these actions arises from his position as Dean of Wright State University School of Medicine.  (Doc. #10 at 42).  Dr. Sahiar's authority arises from his position as the current Chairman of the Aerospace Medicine Residency Program.  *Id*.  As to Dr. Dodge, her authority to communicate with the Board – shown by her alleged communications in June and August of 2007 – suffice at this early stage of the case to show she has the ongoing authority to inform the Board, if warranted, that Plaintiff completed all the residency program requirements.  Plaintiff's new prayer for relief against Dr. Pickoff and the proposed new defendants therefore relates back to her original Complaint as permitted by Rule 15(c)(1)(B).

8

Turning to Rule 15(c)(1)(C)'s notice requirements, Dr. Pickoff argues that Howard

Part, Dr. Dodge, and Dr. Sahiar could not have known – before being named as

defendants in Plaintiff's proposed Amended Complaint – that they could be exposed to

individual liability in this case.  Dr. Pickoff emphasizes that the original Complaint makes

no mention of Howard Part, Dr. Dodge, or Dr. Sahiar.  And they did not, Dr. Pickoff

contends, receive notice within 120 days of any claim Plaintiff raised against them.

"[R]elation back under Rule 15(c)(1)(C) depends on what the party to be added

knew or should have known, not on the amending party's knowledge or its timeliness in

seeking to amend the pleading." *Krupsky v. Costa Crociere S.p.A.*, __U.S.__, __, 130

S.Ct. 2485, 2490, 177 L. Ed. 2d 48, 2010 U.S. LEXIS 4567 (2010).  With this holding as

the starting point, resolution of Dr. Pickoff's contentions is guided by the following

discussion:

> "Rule 15(c) does not require that the new defendants received actual
> notice.  *See Kirk,* 629 F.2d at 407.  It is enough that the new defendants
> received constructive notice of the suit.  *Seber v. Daniels Transfer Co.,* 618
> F.Supp. 1311, 1314 (W.D. Pa. 1985) (Company officers had constructive
> notice through suit against company).  Under some circumstances, notice
> can also be imputed to a new defendant.  *See Kirk,* 629 F.2d at 408 (Notice
> imputed to new defendants through attorney representing original
> defendants).  Even more pertinent to this case, where the complaint alleges
> in substance that the new defendants committed the illegal acts and are
> officials of the original defendant, that relationship may imply receipt of
> sufficient notice.  *Cf. Huron Valley Hospital,* 612 F.Supp. at 658."

*Berndt v. State of Tenn.*, 796 F.2d 879, 884 (6th Cir. 1986)(footnote omitted).[2]  Plaintiff's

---

[2]  Full citations for the two short-cited cases are *Kirk v. Cronvich,* 629 F.2d 404, 407-08 (5th Cir. 1980)
and *Huron Valley Hospital, Inc. v. City of Pontiac,* 612 F.Supp. 654 (E.D. Mich.1985).

proposed Amended Complaint fits the *Berndt* mold:  She alleges in substance that

Howard Part, Dr. Dodge, and Dr. Sahiar committed, condoned, approved, or ratified the

same constitutional wrongs at issue in the original Complaint.  And the significant

position of authority each proposed new defendant held or continues to hold at Wright

State University ties them to the decision to inform the Board that Plaintiff had not

completed all her residency requirements.  Although all is not known about the ambit of

their authority or conduct, Plaintiff has alleged enough to satisfy Rule 15(c).

 As Dean of the School of Medicine, Howard Part may hold at least some degree of

responsibility for Dr. Dodge's alleged communications to the Board without providing

Plaintiff with prior notice or an opportunity to be heard concerning whether she had in

fact completed all the requirements of the residency training and whether she had in fact

completed a thesis.  Similarly, as head of the Aerospace Medicine Residency Program,

Dr. Sahiar was in a position to know whether Plaintiff had or had not completed all her

residency requirements and a thesis.  Dr. Sahiar was therefore in a position to know

whether Dr. Dodge was providing accurate information to the Board.  Dr. Sahiar's status

as head of the Aerospace Medicine Program also should have led him to know about

Plaintiff's original Complaint and her challenge to the constitutionality of Dr. Dodge's

communications with the Board.  "[N]otice may be deemed to have occurred when a

party who has some reason to expect his potential involvement as a defendant hears of the

commencement of litigation through some informal means....  At the same time, the

notice received must be more than notice of the event that gave rise to the cause of action;

10

it must be notice that the plaintiff has instituted the action." *Singletary v. Pennsylvania Dept. of Corrections*, 266 F.3d 186, 195 (3rd Cir. 2001).  Because both Howard Part and Dr. Sahiar held positions closely tied to the events at issue in Plaintiff's original Complaint, they were exposed to sufficient information to provide them with actual or constructive knowledge of Plaintiff's potential claims against them in their individual and official capacities.

As to Dr. Dodge, although Dr. Pickoff was the sole Defendant in the initial Complaint, Dr. Dodge knew that he himself had informed the Board in 2007 about Plaintiff's failure to complete the residency program.  Dr. Dodge thus had actual knowledge that he had possibly committed the same alleged wrong that the original Complaint asserted against Dr. Pickoff.  Dr. Dodge therefore knew, or should have reasonably known, about Plaintiff's claims against him.

Lastly, the present case is reflected in the hypothetical posed in *Krupsky*:

> "A plaintiff may know that a prospective defendant – call him party A – exists, while erroneously believing him to have the status of party B. Similarly, a plaintiff may generally know what party A does while misunderstanding the roles that party A and party B played in the 'conduct, transaction, or occurrence' giving rise to her claim.  If the plaintiff sues party B instead of party A under these circumstances, she has made a 'mistake concerning the proper party's identity notwithstanding her knowledge of the existence of both parties.  The only question under Rule 15(c)(1)(C)(ii), then, is whether party A knew or should have known that, absent some mistake, the action would have been brought against him."

*Krupsky*, 130 S.Ct. at 2494.  Although it can be reasonably assumed in the present case that Plaintiff generally knew what Howard Part, Dr. Dodge, and Dr. Sahiar do in their

respective positions, Plaintiff misunderstood the roles that they, together with Dr. Pickoff, allegedly played or allegedly continue to play in the "conduct, transaction, or occurrence" giving rise to Plaintiff's claims.  Because Plaintiff originally sued Dr. Pickoff without including the other proposed defendants, she made a mistake notwithstanding her knowledge of the existence of all these individuals.  *See id.*  The question thus becomes whether the proposed new defendants "knew or should have known that, absent some mistake, the action would have been brought against [them]."  *Id.*  Having previously answered that question in the affirmative, Plaintiff's proposed Amended Complaint relates back to her original Complaint.

Consequently, the applicable two-year statute of limitations does not bar Plaintiff from amending her Complaint as she proposes.

### C.      Preliminary Pretrial Order Deadline

Dr. Pickoff argues that Plaintiff's proposed Amended Complaint is untimely because it was filed almost seven months after the cut-off date for filing a motion to amend set by the Court's Preliminary Pretrial Order.

"A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

The moving party has demonstrated good cause when "despite due diligence it could not have reasonably met the scheduled deadlines."  *Surbella v. Foley*, 2006 U.S. Dist. LEXIS 55749 *7 (S.D. Ohio August 10, 2006).  Not only must Plaintiff be able to

12

show good cause for failure to seek leave to amend earlier, but also there must be no undue prejudice towards the nonmoving party. *See Stuckey v. Online Resources Corp.*, 2010 WL 1610622 *4 (S.D. Ohio April 16, 2010).  In determining whether the prejudice is undue, the court must consider "whether an amendment...would make the case unduly complex and confusing" and whether "the defending party would have conducted the defense in a substantially different manner had the amendment been tendered previously." *Id.*  However, the primary focus is upon the diligence of the movant; "the absence of prejudice to the opposing party is not equivalent to a showing of good cause." *Surbella*, at *7.

"Although the Court has broad discretion to modify its own pretrial orders, it must be remembered that '[a]dherence to reasonable deadlines is...critical to maintaining integrity in court proceedings,' and that pretrial scheduling orders are 'the essential mechanism for cases becoming trial-ready in an efficient, just, and certain manner." *Id.*

Plaintiff has demonstrated good cause for her failure to seek leave to amend earlier because the information regarding her ineligibility to sit for the board did not surface until March 2010 when Plaintiff received her file from the American Board of Preventative Medicine.  Until then, Plaintiff was unsure why the Board had denied her applications to sit for the certification exam.  Indeed, she thought she has solved the situation by allowing her paper to be published.  She therefore had good cause to seek to amend her Complaint after the applicable deadline.

No undue prejudice was created by Plaintiff's tardiness and none is created by the

13

addition of three new defendants to this case.  Adding these particular defendants will not make the case unduly complex or confusing.  Instead, resolution of these issues is relatively straightforward and would not likely confuse a reasonable jury.  The relief Plaintiff seeks – both monetary and injunctive – will be fully obtainable only when all, or most, of the three additional defendants are parties to this case.

And, although adherence to deadlines tends to promote the just, speedy, and inexpensive resolution of cases, the allegations and circumstances presently before the Court warrant the addition of the new party defendants despite the expiration of the deadline for amending pleadings.  *Cf. Moore v. City of Paducah*, 790 F.2d 557 (6th Cir. 1986) ("Cases are to be decided on their merits and not upon technicalities.").

## IT IS THEREFORE RECOMMENDED THAT:

Plaintiff's Motion to Amend the Complaint (Doc. #10) be GRANTED.


August 31, 2010                                        s/ Sharon L. Ovington
                                                    Sharon L. Ovington
                                              United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).