IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

YVETTE DEBOIS[1],                    :

    Plaintiff,                    :

                                Case No. 3:09cv230

    vs.                    :

                       JUDGE WALTER HERBERT RICE

ARTHUR PICKOFF, MD,                    :

    Defendants.                    :

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN
PART PLAINTIFF'S MOTION TO ADD PARTY DEFENDANTS/AMEND
COMPLAINT(DOC. #10); DECISION AND ENTRY SUSTAINING IN
PART AND OVERRULING IN PART DEFENDANT'S OBJECTIONS (DOC.
#20) TO THE MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATIONS (DOC. #19); SAID JUDICIAL FILING ADOPTED
IN PART AND REJECTED IN PART; DIRECTIONS TO PLAINTIFF

---

Plaintiff Yvette DeBois, M.D. ("Plaintiff" or "DeBois") was formerly a medical

resident at Wright State University medical school.  She has brought the above

captioned suit against defendant Arthur Pickoff ("Defendant" or "Pickoff"), whom

her original Complaint identified as a "management official" at the medical school.

This matter is now before the Court on Plaintiff's captioned "Motion to Add Party

Defendants/Amend Complaint Instanter" (Doc. #10).

---

[1]When this case was first filed, Plaintiff's name was erroneously spelled "DuBois."
Plaintiff filed a motion to correct the spelling to "DeBois" (Doc. #21), which is now
reflected in the case caption.

The baseline contention of Plaintiff's suit is that, following her residency, she applied to take the medical board certification examination, as administered by the American Board of Preventative Medicine, but certain Wright State officials conveyed information (according to DeBois, false or inaccurate information) to the Board that she had not completed various components of the residency program and thus, was ineligible to sit for the exam. She contends that this action or actions deprived her of her rights, secured by the United States Constitution, and in violation of 42 U.S.C. § 1983.

Although her initial Complaint listed Pickoff as the sole defendant, the instant motion seeks leave to file an amended complaint that would add three new defendants to the case, as well as modify some of her factual contentions and claims for relief. Plaintiff has attached to her motion a proposed Amended Complaint that reflects the desired alterations. See Doc. #10-1. Defendant has opposed Plaintiff's motion on a number of grounds.

As a means of analysis, the Court begins by recounting the relevant factual and procedural background, before addressing the parties' arguments for and against Plaintiff's motion.

Factual and Procedural Background

From 1998 until 2000, DeBois was a resident in the Aerospace Medicine program at Wright State University. As part of her residency training, DeBois was required to complete a rotation at the Civil Aerospace Medical Institute. One

- 2 -

component of that rotation was that residents complete a research paper. Doc. #1 at ¶8. Plaintiff asserts that she was aware of the paper requirement, and in fact, fulfilled it by completing a paper concerning the management of certain stroke-like neurological conditions experienced by pilots. Student papers are often published in The Federal Air Surgeon's Bulletin, a journal that is reviewed by aeromedical practitioners. Id. at ¶9. While DeBois had no objection to completing the paper as a research exercise, she did not want her paper to be published in the journal because she felt that her background and training were not such that practitioners should rely on her research concerning neurological issues. Id. at ¶11. At some point, Plaintiff sought to sit for the board certification exam administered by the American Board of Preventative Medicine ("the Board"). Id. at ¶7. However, the Board did not grant her permission, and indicated that the reason was that it had been informed that some components of her residency program had not been completed satisfactorily. Id. After some inquiry, Plaintiff believed that she had ascertained what had caused Wright State officials to indicate her residency was incomplete; she determined that the issue was her refusal to allow her paper to be published. Id. at ¶¶8–10. DeBois eventually acquiesced, and released her paper for publication, although she simultaneously voiced some of her related ethical concerns. Id. at ¶11. However, Plaintiff was subsequently denied permission to sit for the examination, as Wright State personnel continued to indicate to the Board that her residency was not complete. Id. at ¶12. Plaintiff indicates that any statements to the effect that she had not completed her residency were false, and

- 3 -

that no one from the medical school had ever notified her that her program was incomplete. Id. at ¶11.

The exact time frame of the events just described, especially as they relate to the research paper, is a matter of some confusion. In her original Complaint, Plaintiff indicated that the issues surrounding her paper's publication, and her concomitant inability to sit for her certification exam, first arose in June, 2007. See Doc. #1 at ¶7. However, in her memorandum in support of the instant motion to amend her Complaint, Plaintiff again discusses the dispute over her paper, but this time indicates that the incident took place in 2004 (without reference to a specific month or day), not 2007. See Doc. #10 at 3 ("In *2004*, subsequent to the completion of her rotation and graduation, Dr. DeBois sought board certification in Aerospace Medicine.") (emphasis added). Moreover, as will be revisited below, the proposed Amended Complaint that Plaintiff attached to her motion omits any discussion of the paper whatsoever. See Doc. #10-1. In the absence of any allegations regarding the publication of the paper in the proposed Amended Complaint, Plaintiff simply indicates that, in June of 2007, she applied to the Board to take her examination, and was denied permission on or about August, 17, 2007. See Doc. #10-1 at ¶10.

Perhaps the best explanation for this discrepancy is that Plaintiff twice sought permission to sit for her board certification, once in 2004, in which time period the issues concerning the publication of her paper came to light, and again in 2007, in which time period another set of issues caused the Board to deny her

permission to sit for the exam.  The fact that Plaintiff's supporting memorandum indicates that DeBois "*again* sought permission to sit for her board examination in 2007" supports this explanation, from which one could also infer that the assertion in the original Complaint that the paper controversy took place in 2007, rather than 2004, was simply a mistake.  Doc. #10 at 3.  However, Plaintiff has not offered any affidavits or other evidence to clarify this matter, one way or the other.

Regardless of the foregoing issue, both the original and amended Complaints indicate that DeBois sought permission to take her certification exam in June of 2007, and was denied the same on or about August, 17, 2007.  See Doc. #1 at ¶¶7 and 12; Doc. #10-1 at ¶10.  Both documents allege that Wright State officials communicated inaccurate information to the board, to the effect that she had not completed the requirements of her residency, and that, as a result, she was denied permission to take her board certification exam.  See Doc. #1 at ¶¶7–8, and 9; Doc. #10-1 at ¶11–12.  That Plaintiff believes that whatever communications from Wright State officials caused the Board to deny her application were inaccurate or wrongful is facially apparent in both of her pleading documents.  It is similarly apparent that Plaintiff believes that any deficiencies were not communicated to her by anyone in the residency program, and that she was, effectively, mislead to think that she had completed all program requirements satisfactorily.

Plaintiff's original Complaint indicated that Arthur Pickoff ("Pickoff") made the offending statements to the Board, and named him as the sole defendant.  Doc. #1 at ¶12.  The proposed Amended Complaint names three new Defendants in

- 5 -

addition to Pickoff, to wit: Dr. Howard Part, who is or was the Dean of Wright

State's medical school, Dr. Robin Dodge, who was the Chairman of the Aerospace

Medicine Residency Program and Dr. Farhad Sahiar, who is the current Chairman of

the same residency program (these individuals are referred to as "Part," "Dodge"

and "Sahiar," respectively, or collectively as "proposed new Defendants").  Doc.

#10-1 at ¶¶3–4.  Pickoff is listed as a Defendant in both documents, and is

identified as a "management official" of Wright State, and the Chairman of the

Department of Community Health.  Doc. #10-1 at ¶2.  The proposed Amended

Complaint indicates that it was actually Dodge who, in 2007, communicated to the

Board that DeBois had not completed her residency, thereby causing her to be

denied permission to take the exam.  Id. at ¶10.  Plaintiff has presented a letter

Dodge wrote to the Board, in which he indicated that DeBois had "completed her

didactic work and assigned practicum rotations," but had not completed a required

thesis.  Doc. #13 Ex. A.[2]  She has also presented a letter the Board sent her,

explaining that she was not eligible to sit for the certification exam, in part because

of the information Dodge had communicated.  Id. Ex. B.  The proposed Amended

Complaint goes on to indicate that the remaining parties, Pickoff, Part and Sahiar,

"authorized, condoned and ratified" Dodge's actions.  Doc. #10-1 at ¶13.

---

[2]Adding to the confusion over the relevant timeline, the header of the letter lists a
date of July 24, 2005, but the Board's "Received" stamp on the same document is
dated July 26, 2007.  However, given that the Board's letter to DeBois explaining
its decision is dated August 17, 2007, it appears likely that the 2005 date is
simply a typographical error.

Plaintiff seeks leave to amend her original Complaint, and wishes to replace it with the Proposed Amended Complaint that would effect the changes indicated in the foregoing discussion. Pickoff has opposed Plaintiff's motion, arguing that leave to amend should not be granted because the proposed amendments are not permissible in light of the requirements of Rule 15(c) of the Federal Rules of Civil Procedure. Although Part, Dodge and Sahiar are identified in the proposed Amended Complaint, they have never been served with process and are not currently parties to this action.

In her original Complaint, Plaintiff stated the following causes of action, pursuant to 42 U.S.C. § 1983: deprivation of her First Amendment rights, in that Defendant's actions forced her to speak against her will (Doc. #1 at ¶16); deprivation of procedural and substantive due process pursuant to the Fourteenth and Fifth Amendments (Id. at ¶¶18–19); violation of the Equal Protection Clause of the Fourteenth Amendment (Id. at ¶19) and; "willful and wanton misconduct that was also retaliatory" (Id. at ¶21). The only material alteration of these claims in the proposed Amended Complaint is that the paragraph dealing with the First Amendment is deleted entirely. See Doc. #10-1.


After the matter was fully briefed, it was referred to United States Magistrate Judge Sharon L. Ovington for a Report and Recommendations, which was duly entered on August 31, 2010. Doc. #19 (Report and Recommendations). Therein, Judge Ovington concluded that the proposed alterations were permissible

in light of Rule 15, and that leave to amend should be granted.  Id.  Defendant filed

timely Objections to the Report and Recommendations, triggering review in this

Court of the aforesaid judicial filing.  See Doc. #20 (Defendant's Objections).

Plaintiff has filed neither objections of her own, nor any responsive memorandum in

light of Defendant's filing, although the Report and Recommendations indicated

that she was permitted to do so.

On legal issues, a district court reviews de novo any part of a magistrate

judge's Report and Recommendations to which an objection is properly filed.  See

Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C).


Analysis

"Pursuant to Fed. R. Civ. P. 15(a), a court should freely grant leave to

amend a complaint 'when justice so requires.'  However, leave to amend may be

denied where the amendment would be futile."  Yuhasz v. Brush Wellman, Inc.,

341 F.3d 559, 569 (6th Cir. 2003) (citing Forman v. Davis, 371 U.S. 178, 182

(1962).  The primary obstacle to Plaintiff's motion is the statute of limitations.  All

of DeBois's claims have been brought pursuant to 42 U.S.C. § 1983.  In Wilson v.

Garcia, 471 U.S. 261, (1985) and Owens v. Okure, 488 U.S. 235 (1989), the

Supreme Court addressed the issue of the limitations period in § 1983 actions,

given that that federal statute does not itself impose a limitations period.  In

Wilson, the Court characterized § 1983 actions as tort suits for personal injuries,

and determined that courts should borrow the appropriate statute of limitations for

personal injury actions from the state in which the suit was brought.  Wilson v,
471 U.S. at 275–76.  In Owens, the Court held that for states with multiple
limitations periods for different personal injury actions, the state's general or
residual limitations period must be applied in § 1983 cases.  Owens, 488 U.S. at
249–50.  Applying these precedents, the Sixth Circuit has held that the two-year
limitations period provided for in § 2305.10 of the Ohio Revised Code applies to all
§ 1983 actions brought in this state.  Browning v. Pendleton, 869 F.2d 989,
991–2 (6th Cir. 1989) (en banc); Banks v. City of Whitehall, 344 F.3d 550, 553
(6th Cir. 2003).  Accordingly, a two-year statute of limitations applies to all of
Plaintiff's claims.

        "Ordinarily, the limitations period starts to run when the plaintiff knows or
has reason to know of the injury which is the basis of his action."  Kuhnle Bros.,
Inc. v. County of Geauga, 103 F.3d 516, 520 (6th Cir. 1997).  As reflected in the
Magistrate Judge's Report and Recommendations, Plaintiff's cause of action
accrued, and thus, the statute of limitations began to run, on or about August 17,
2007, when she learned that Wright State officials had informed the Board that
she had not successfully completed the requirements of her residency program.
See Doc. #19 at 6.  Accordingly, the statute of limitations expired two years later,
on or about August 17, 2009.  Id.  While Plaintiff filed her initial Complaint on June
11, 2009, she did not seek to amend same until April 20, 2010, well after the
statute of limitations had expired.  Accordingly, because Plaintiff did not attempt to
assert any claims against the new Defendants until after the limitations period had

- 9 -

expired, her amendment to add those parties is futile, unless there is "relation back" between the proposed Amended Complaint and her initial pleading.

Where an amended complaint relates back to a plaintiff's original complaint, the amended pleading is said to "speak from" the date of the original filing; thus, relation back may stave off the statute of limitations as to newly added defendants or claims, allowing a plaintiff to include them, as if they had been part of the case from the beginning.  Garvin v. City of Philadelphia, 354 F.3d 215, 220 (3d Cir. 2003) ("The relation back provision of Rule 15(c) aims to ameliorate the harsh result of the strict application of the statute of limitations.").  Rule 15(c) of the Federal Rules of Civil Procedure governs whether an amendment will relate back, and provides as follows:

> (1) *When an Amendment Relates Back*. An amendment to a pleading relates back to the date of the original pleading when:
> (A) the law that provides the applicable statute of limitations allows relation back;
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading; or
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

The plaintiff has the burden of demonstrating that the requirements of Rule 15(c) have been met.  Dodson v. Hillcrest Secs., 95 F.3d 52, 1996 U.S. App. LEXIS

22863 at *10 (5th Cir. 1996) (unpublished table decision) ("While [the defendant] had the burden on summary judgment of presenting evidence sufficient to prove its statute of limitations defense, [the plaintiff] had the burden of proof to rebut the statute of limitations grounds by relation back under Rule 15(c)."); Markhorst v. Ridgid, Inc., 480 F. Supp. 2d 813, 815 (E.D. Pa. 2007) ("Plaintiff bears the burden of establishing the requirements of 15(c)."); cf. Stark v. Dynascan Corp., 902 F.2d 549, 551 (7th Cir. 1990) ("On a motion for summary judgment, the burden is on the plaintiff to present facts which, if true, would justify equitable tolling of the statute of limitations.").

Because neither party argues that there are any statutory grounds for relation back in the present case, the Court may confine its analysis to 15(c)(1)(B) and (C). Rule 15(c)(1)(B) applies to an amendment that does not alter the plaintiff or defendant parties, and requires only that such an amendment assert a claim or defense that arises out of the same "conduct transaction, or occurrence set out – or attempted to be set out – in the original pleading." Rule 15(c)(1)(C) addresses situations where a change in parties or the naming of parties is sought. DeBois seeks to do both: her proposed Amended Complaint alters the factual content and list of claims asserted, but also names three new defendants, in addition to Pickoff. Accordingly, Plaintiff must satisfy all the requirements of Rule 15(c)(1)(B) and (C), although an attempt to change parties would, by itself, require the same result, given that 15(c)(1)(C) incorporates 15(c)(1)(B)'s requirement of continuity in the "conduct transaction or occurrence" set out in the two pleadings.

After reviewing the record and relevant case law, the Magistrate Judge concluded that Plaintiff had satisfied all of the relevant requirements of Rule 15(c), and recommended that her Motion to Amend be sustained in its entirety.  In his Objections to the Magistrate Judge's Report and Recommendations, Defendant presents three bases for rejecting the Magistrate Judge's determination, to wit:

1.   That the factual circumstances of the Amended Complaint are sufficiently different that Plaintiff's claims cannot be said to arise out of the same "conduct, transaction, or occurrence" set out in the original Complaint, as required by Fed. R. Civ. P. 15(c)(1)(B);

2.   That the proposed new Defendants did not have timely notice, actual or constructive, of the original suit as required by Fed. R. Civ. P. 15(c)(1)(C)(i); and

3.   That the proposed amendment does not correct a mistake in the sense required by Fed. R. Civ. P. 15(c)(1)(C)(ii) or "change" a party in the sense contemplated by 15(c)(1)(C) generally.

See Doc. #20.  As a means of analysis, the Court organizes its inquiry around the three points that Defendant has raised, addressing them in the same order.


1. Same Conduct, Transaction, or Occurrence

Plaintiff's proposed Amended Complaint modifies some of the factual allegations and claims for relief asserted in her original pleading.  Rule 15(c)(1)(B) requires that any claim or defense in an amended pleading arise from the same "conduct, transaction, or occurrence" identified in the original complaint.  As the Second Circuit has observed, the primary inquiry, in determining whether the same "conduct, transaction, or occurrence" test is satisfied, "is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party

within the statute of limitations by the general fact situation alleged in the original pleading." Stevelman v. Alias Research Inc., 174 F.3d 79, 86 (2d Cir. 1999) (internal quotation marks and citation omitted).

Defendant argues that the factual allegations in the Amended Complaint are so different from the original Complaint that there can be no relation back under Rule 15(c)(1)(B). Defendant is right to characterize some of the alterations in the proposed Amended Complaint as confusing. The primary difference is that, while Plaintiff's supporting memorandum continues to discuss the controversy concerning the publication of her paper, all of the allegations related to this matter have been removed from her proposed Amended Complaint. Her original Complaint portrayed a detailed back-and-forth whereby she: was initially led to believe that publishing a paper was not, even if completing a paper was, a prerequisite for finishing her residency and obtaining permission to sit for her boards (Doc. #1 at ¶11); subsequently learned that Wright State had not supported her request to take the board exam because she had not authorized publication of her paper (Id. at ¶¶7-8); eventually acquiesced to the paper's publication, however, "along with granting permission ... voiced concerns, some of which were ethical" (Id. at ¶11) and; was subsequently informed by the Board, on or about August 17, 2007, that she had not completed "the clinical requirements necessary for her to sit for the examination," (Id. at ¶12). By contrast, the version of events portrayed in the Amended Complaint is simplified. Beyond indicating that Plaintiff was once a medical resident at Wright State, the amended pleading asserts only the following

facts: in June of 2007, DeBois applied to take her board examination and on August 17, 2007, was informed by the Board that Wright State officials had indicated that she did not complete the *clinical* requirements of her residency program (Doc. #10-1 at ¶10); "subsequently" (though no precise date is given) learned that Dodge had informed the Board that Plaintiff "had, in fact, completed her clinical requirements, but had not completed a thesis" (Id. at ¶11); DeBois believes that she satisfactorily completed all the requirements of her residency and no one from Wright State ever informed her of a deficiency (Id. at ¶¶12 and 14) and; Dodge's actions were ratified and condoned by the other Wright State officials (Id. at ¶13).[3] There is no longer any reference to Plaintiff's paper on neurological issues, nor the desire of Wright State officials to have Plaintiff publish that paper in their aeromedical journal. Coinciding with the removal of any discussion of her paper, or accompanying accusations that she was made to speak against her will, Plaintiff's Amended Complaint does not assert that she experienced any deprivation of her First Amendment rights, although her claim for relief pursuant to the Fifth and Fourteenth Amendments remains basically intact. Finally, as above,

---

[3]Referring to the supporting documents attached to Plaintiff's Reply does not necessarily clarify this matter. The letter from the Board, dated August 17, indicates that DeBois was not eligible for the October 2007 examination for three reasons: 1) she did not possess a valid, unrestricted license to practice medicine; 2) the board had contacted the Director of Plaintiff's residency program, who had informed them that she did not complete "the practicum year" of the residency training; and 3) that she had not completed one or more full-time years of practice in Aerospace Medicine. See Doc. #13 Ex. B.

the proposed Amended Complaint indicates that it was Dodge, not Pickoff, who made the offending statements to the Board.

Although there are certainly differences between them, the factual allegations contained in Plaintiff's Amended Complaint are substantially similar to those in her original pleading.  Both documents assert, generally speaking, that false statements made by Wright State personnel caused the Board to deny DeBois's application to sit for her certification exam, and that she experienced injury as a result.  In Miller v. American Heavy Lift Shipping, 231 F.3d 242 (6th Cir. 2000), the Sixth Circuit summarized a number of the guiding principles that should inform a court's inquiry on the same "conduct, transaction or occurrence" issue.

> This court has stated that "the thrust of Rule 15 is to reinforce the principle that cases 'should be tried on their merits rather than the technicalities of pleadings.'" Moore v. Paducah, 790 F.2d 557, 559 (6th Cir. 1986) (quoting Tefft v. Seward, 689 F.2d 637, 639 (6th Cir. 1982)). Thus, a court will permit a party to add even a new legal theory in an amended pleading as long as it arises out of the same transaction or occurrence. See Hageman v. Signal L.P. Gas, Inc., 486 F.2d 479, 484 (6th Cir. 1973) ("where the parties are the same, . . . an amendment which adds another claim arising out of the same transaction or occurrence does relate back to the date of the original complaint."); Koon v. Lakeshore Contractors, 128 F.R.D. 650, 653 (W.D. Mich. 1988) ("an added theory of liability for the same occurrence may relate back." (citing Hageman)), aff'd without opinion, 486 F.2d 479; 889 F.2d 1087 (Table), 1989 WL 137151 (6th Cir. Nov. 15, 1989); see also 6A Wright et al., federal practice and procedure § 1497, at 94-95, 98-99 (1990 & Supp. 2000) ("an amendment that states an entirely new claim for relief will relate back as long as it satisfies the test embodied in . . . Rule 15(c)."). Likewise, "an amendment that alleges added events leading up to the same injury may relate back." Koon, 128 F.R.D. at 653 (citing Tiller v. Atlantic Coast Line R. Co., 323 U.S. 574, 581, 89 L. Ed. 465, 65 S. Ct. 421 (1945)).

Id. at 249.  The Sixth Circuit has also stated that "when applying this standard to the facts of a given case, we give meaning to those terms 'not by generic or ideal notions of what constitutes a 'conduct, transaction, or occurrence,' but instead by asking whether the party asserting the statute of limitations defense had been placed on notice that he could be called to answer for the allegations in the amended pleading.'"  Hall v. Spencer County, Kentucky, 583 F.3d 930, 934 (6th Cir. 2009) (quoting  Bledsoe v. Cmty. Health Sys., 501 F.3d 493, 516 (6th Cir. 2007).

The allegations in the proposed Amended Complaint, while somewhat different, nevertheless arise from the same conduct, transaction or occurrence that Plaintiff set out in her original pleading.  The issue has always been whether officials at Wright State communicated inaccurate information to the Board concerning Plaintiff's completion of her residency requirements, that resulted in her being unable to sit for her certification exam.  Although it is true that "a claim with entirely different 'operative facts' will not relate back," in the present instance, the Plaintiff has "alleged the same general set of facts in the amended complaint as [s]he did in the original."  Miller, 231 F.3d  at 250.  Any defendant who had read the original Complaint would have a reasonable understanding of the conduct for which Plaintiff now seeks to recover in her amended pleading, and would be on notice that the issue was inaccurate communications to the Board, to the effect that DeBois had not completed her residency requirements.  In light of the Sixth Circuit's conclusion that a party may be permitted "to add even a new legal theory

- 16 -

in an amended pleading," the Court believes that an amended pleading which is different primarily in that it removes a legal theory and makes minor alterations to the facts alleged, may also relate back to the original complaint, given that the general nature of the cause of action, and majority of the facts, have remained the same. Id. at 249.

Accordingly, the requirements of Rule 15(c)(1)(B) are satisfied, and relation back is appropriate as to the factual allegations and causes of action stated in Plaintiff's proposed Amended Complaint. The remaining points raised in Defendant's Objections concern DeBois's attempt to add three new defendants to the case.

## 2. Notice to the Proposed New Defendants

In addition to the same transaction or occurrence requirement, a plaintiff who wishes to change the defendants to be sued must demonstrate that the requirements of Rule 15(c)(1)(C) are satisfied. That subsection incorporates the requirement of Rule 15(c)(1)(B), and the Supreme Court has summarized the criteria for relation back where there is a change in parties as follows:

> Relation back is dependent upon four factors, all of which must be satisfied: (1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed limitations period.

- 17 -

<u>Schiavone v. Fortune</u>, 477 U.S. 21, 29 (1986).[4]  Defendant asserts that Part, Dodge and Sahiar did not receive any notice of Plaintiff's suit.

Actual notice is not strictly required by Rule 15(c)(1)(C), and in some situations, constructive notice may suffice.  Both Plaintiff's Reply memorandum, as well as the Report and Recommendations, rely heavily on <u>Berndt v. Tennessee</u>, 796 F.2d 879 (6th Cir. 1986), in arguing that the proposed new Defendants received notice.  In <u>Brendt</u>, the Sixth Circuit concluded that certain institutional relationships between an original defendant and a defendant brought into a case pursuant to Rule 15(c) may allow the knowledge of the institutional party to be imputed to its subordinate officials or agents.  The court explained:

> We believe that Rule 15(c) does not require that the new defendants received actual notice. <u>See</u> <u>Kirk v. Cronvich</u>, 629 F.2d 404, 407 (5th Cir. 1980). It is enough that the new defendants received constructive notice of the suit. <u>Seber v. Daniels  Transfer Co.</u>, 618 F. Supp. 1311, 1314 (W.D. Pa. 1985) (Company officers had constructive notice through suit against company). Under some circumstances, notice can also be imputed to a new defendant. <u>See</u> <u>Kirk</u>, 629 F.2d at 408 (Notice imputed to new defendants through attorney representing original defendants). Even more pertinent to this case, where the complaint alleges in substance that the new defendants committed the illegal acts and are officials of the original defendant, that relationship may imply receipt of sufficient notice.

<u>Id</u>. at 884.  The Report and Recommendations concluded that since the proposed new defendants, Part, Dodge and Sahiar were, like Pickoff, all professionals

---

[4]The former version of Rule 15 required notice within the statute of limitations period, as indicated in the fourth point of the above citation.  However, the current version of Rule 15 requires that a party to be brought in receive notice within 120 days after the complaint is filed, as prescribed by Rule 4(m).  However, this difference is immaterial in the present case, as the parties only disagree as to whether there was notice at all, not when it occurred.

associated with Wright State's medical school, they had constructive notice of Plaintiff's suit, despite the fact that only Pickoff was served and named as a defendant in the original Complaint.

The Court cannot agree that the new Defendants received constructive notice in accordance with the Sixth Circuit's decision in <u>Berndt</u>.  As Defendant points out in his Objections, this case is factually distinguishable from <u>Brendt</u> in an important respect.  There, the Plaintiff had originally sued the state of Tennessee and Lakeshore Medical Institute for, inter alia, beatings he received at the hands of the institute's staff.  In indicating that the plaintiff could, while satisfying Rule 15(c)'s requirements, amend his complaint to sue the actual state employees who harmed him, the Court of Appeals emphasized that the new defendants would be official agents/employees of the former defendant mental health institution.  <u>See</u> <u>id</u>. In the instant case, Plaintiff's original Complaint named only Pickoff, in his individual capacity, as a defendant.  Since Wright State was not named as a defendant, there is no larger organization that can be viewed as a conduit through which the proposed new Defendants received constructive notice of this action. The Sixth Circuit has observed that notice cannot be imputed to similarly ranked officials when only an individual officer, and no overarching organization, is sued in the original complaint:

> appellants cannot benefit from the "imputed knowledge" doctrine of <u>Berndt</u> <u>v. Tennessee</u>, 796 F.2d 879 (1986), because the City of Louisville was never named as a defendant in this case. In <u>Berndt</u>, knowledge was imputed to the newly added defendants because they were officials of the originally named defendant, the State of Tennessee.

Cox v. Treadway, 75 F.3d 230, 240 (6th Cir. 1996).

Although the new Defendants certainly worked within some proximity of Pickoff, DeBois has not offered any evidence that would tend to indicate that they had knowledge of her original suit.  In presenting the issue, she simply conjectures that the proposed new Defendants must have received notice of her suit when Defendant Pickoff began preparing his defense.  See Doc. #13 at 4.   Even if these individuals worked together, Plaintiff has the ultimate burden of proof on Rule 15 issues, and is required to present something more than speculation to demonstrate that the notice requirements of 15(c) have been satisfied as to the proposed new Defendants.  Lender's Service, Inc. v. Dayton Bar Ass'n, 758 F. Supp. 429, 444 (S.D. Ohio 1991) (Graham, J.) ("There is technically no evidence before the court to show that the individual defendants ever received notice of the filing of the original complaint in the present case, although practically speaking, the court would be surprised if they did not have notice."); see also Markhorst, 480 F. Supp. 2d at 816–18 (no relation back where plaintiff failed to introduce any evidence that the party to be added had received notice within the limitations period); Scheimer v. National Capital Region, Nat. Park Service, 737 F.Supp. 3, 5 (D.D.C. 1990) (plaintiff's untimely effort to add the United States as a proper defendant did not relate back to the timely filed original complaint against a federal agency, and the fact of earlier administrative proceedings involving the government agency did not impute knowledge to the United States).

Additionally, Plaintiff asserts that relation back as to Dodge is appropriate because he must have had personal knowledge of the fact that he was the one who made the offending statements to the Board, not Pickoff. While Dodge certainly knew that he had written the letter that Plaintiff has identified, "the notice received must be more than notice of the event that gave rise to the cause of action; it must be notice that the plaintiff has instituted the action." Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 195 (3d Cir. 2001). Plaintiff has failed to demonstrate actual or constructive notice as to the proposed new Defendants.

3. Change in Parties/Correction of Mistake

Even if the notice requirements of 15(c)(1)(C)(i) had been satisfied, Plaintiff's proposed amendment to add three new defendants must fail for a more basic reason. Rule 15(c)(1)(C) addresses an amendment that "changes a party or the naming of the party against whom a claim is asserted," but the Sixth Circuit has narrowly construed what kinds of alterations can be considered such a "change" in parties. Specifically, courts in this circuit have allowed relation back where a new party is *substituted* for an old one, but have consistently held that when "[t]he effect of Plaintiff's amendment is to *add* another party[,]" it "establishes a new and independent cause of action which cannot be maintained when the statute has run, for the amendment is one of substance rather than one of form and brings into being one not presently in court." United States ex rel. Statham Instruments, Inc. v. Western Cas. & Surety Co., 359 F.2d 521, 523 (6th Cir. 1966) (emphasis added). Accord In re Kent Holland Die Casting & Plating, Inc., 928 F.2d 1448,

1450 (6th Cir. 1991); Smart v. Ellis Trucking Co., 580 F.2d 215, 218 (6th Cir.

1978); Marlowe v. Fisher Body, 489 F.2d 1057, 1064 (6th Cir. 1973).  This line of

cases was reaffirmed last year, as the Sixth Circuit stated in Asher v. Unarco

Material Handling, Inc., 596 F.3d 313, 318 (6th Cir. 2010) that "the type of

'changes' permitted [by Rule 15(c)] are limited to corrections of misnomers or

misdescriptions" and "the precedent of this circuit clearly holds that 'an

amendment which adds a new party creates a new cause of action and there is no

relation back to the original filing for purposes of limitations.'" (quoting In re Kent

Holland Die Casting & Plating, Inc.) (extending Sixth Circuit holdings that

defendants cannot be added to a suit after the limitations period has expired to also

bar the addition of new plaintiffs after the statute has run).  This reading of Rule

15(c) has been criticized by some courts as overly technical, or even inconsistent

with the plain language of the Rule itself.  See In re Greater Southeast Community

Hospital Corp. I, 341 B.R. 91, 99 n.7 (Bankr. D.D.C. 2006).  Nevertheless, the

Sixth Circuit's construction, reflected in Asher and similar cases, has consistently

been that a Rule 15(c) "change" in parties requires a one-for-one substitution, and

that the addition of new parties alongside those that are already part of the action

precludes relation back to the original complaint.  This Court must follow that line

of cases unless an inconsistent decision of the United States Supreme Court

requires modification of this circuit's precedent, or the Sixth Circuit, sitting en

banc, overrules its prior decisions.  Salmi v. Secretary of Health & Human Services,

774 F.2d 685, 689 (6th Cir. 1985).  Plaintiff's proposed amendment does not

change a party in the sense required in the Sixth Circuit, but rather, adds three new defendants, in addition to Pickoff.

In a recent unpublished decision, Freese v. Cont'l Airlines, Inc., 2011 U.S. App. LEXIS 2259 (6th Cir. 2011), the Sixth Circuit remanded a case in which the district court had denied the plaintiff's motion to amend his complaint on the grounds that it added a party (and thus, did not effect a "change" in parties, per Asher and similar decisions), and that the decision to sue the original party was a deliberate choice, rather than a mistake. Id. at *3. The Court of Appeals instructed the district court to review the recent case of Krupski v. Costa Crociere S. p. A., __ U.S. __, 130 S.Ct. 2485 (2010), which had been decided while the appeal was pending, and in which the Supreme Court addressed the nature of "mistake" and relation back under Rule 15(c), to determine if it required modification of the original holding. The Magistrate Judge's decision also relied on Krupski in finding that Plaintiff's motion to amend should be granted. Accordingly, the Court now turns to that case to determine whether its reasoning requires modification of any of the analysis above.

Krupski dealt primarily with the nature of "mistake" in light of Rule 15(c)(1)(C)(ii)'s requirement that a party to be brought in by amendment "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Therein, the plaintiff had suffered an injury from a fall aboard a cruise ship, and attempted to bring suit against the ship's owner in the Southern District of Florida. She initially named "Costa Cruise" as the defendant in her lawsuit, but that entity introduced a variety of evidence

that demonstrated that it was merely the North American sales and marketing agent of "Costa Crociere s.p.a.," an Italian corporation that was the actual carrier and operator of the vessel on which she was injured.  After the statute of limitations had expired, the district court allowed Krupski to amend her complaint, naming Costa Crociere s.p.a. as defendant and dismissing Costa Cruise.  Shortly thereafter, Costa Crociere moved to dismiss, arguing that the amended complaint did not relate back to the original and was, accordingly, untimely.  Id. at 2490–92.

The district court granted Costa Crociere's motion to dismiss, and the Eleventh Circuit Court of Appeals affirmed.  In its decision, the Court of Appeals emphasized that Krupski's contract (printed on her ticket) clearly identified Costa Crociere as the ship's carrier, and that Krupski thus knew or should have known of its identity as a potential party.  The court concluded that, in light of those facts, Krupski had not made a "mistake" regarding a party's identity, but rather had simply "chosen to sue one potential party over another."  Id. at 2492.  The Supreme Court unanimously reversed, concluding that the Court of Appeals had misunderstood the nature of the "mistake" requirement of Rule 15(c)(1)(C)(ii).

> The question under Rule 15(c)(1)(C)(ii) is not whether Krupski knew or should have known the identity of Costa Crociere as the proper defendant, but whether Costa Crociere knew or should have known that it would have been named as a defendant but for an error. Rule 15(c)(1)(C)(ii) asks what the prospective defendant knew or should have known during the Rule 4(m) period, not what the plaintiff knew or should have known at the time of filing her original complaint.
>
> Information in the plaintiff's possession is relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity. For purposes of that inquiry, it would be error to conflate knowledge of a party's existence with the absence of mistake. A

mistake is "[a]n error, misconception, or misunderstanding; an erroneous belief." Black's Law Dictionary 1092 (9th ed. 2009); see also Webster's Third New International Dictionary 1446 (2002) (defining "mistake" as "a misunderstanding of the meaning or implication of something"; "a wrong action or statement proceeding from faulty judgment, inadequate knowledge, or inattention"; "an erroneous belief"; or "a state of mind not in accordance with the facts"). That a plaintiff knows of a party's existence does not preclude her from making a mistake with respect to that party's identity. A plaintiff may know that a prospective defendant -- call him party A -- exists, while erroneously believing him to have the status of party B. Similarly, a plaintiff may know generally what party A does while misunderstanding the roles that party A and party B played in the "conduct, transaction, or occurrence" giving rise to her claim. If the plaintiff sues party B instead of party A under these circumstances, she has made a "mistake concerning the proper party's identity" notwithstanding her knowledge of the existence of both parties. The only question under Rule 15(c)(1)(C)(ii), then, is whether party A knew or should have known that, absent some mistake, the action would have been brought against him.

Respondent urges that the key issue under Rule 15(c)(1)(C)(ii) is whether the plaintiff made a deliberate choice to sue one party over another. Brief for Respondent 11-16. We agree that making a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity. We disagree, however, with respondent's position that any time a plaintiff is aware of the existence of two parties and chooses to sue the wrong one, the proper defendant could reasonably believe that the plaintiff made no mistake. The reasonableness of the mistake is not itself at issue. As noted, a plaintiff might know that the prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the events giving rise to the claim at issue, and she may mistakenly choose to sue a different defendant based on that misimpression. That kind of deliberate but mistaken choice does not foreclose a finding that Rule 15(c)(1)(C)(ii) has been satisfied.

Id. at 2493-4.

As reflected in the Magistrate Judge's decision, the relationship among parties in this case is arguably similar to the Supreme Court's hypothetical discussing potential parties A and B in Krupski. At the time she filed her original Complaint, DeBois may have known of Pickoff, Part, Dodge and Sahiar, but

misunderstood what roles they played in preventing her from sitting for her certification exam.  In light of the Supreme Court's decision, it cannot be said that Plaintiff's knowledge of the existence of the new Defendants when she filed her Complaint, means that *they* did not know, or should not have known, that but for a mistake, they would have been named as parties to the lawsuit.  However, while Defendant does argue that Plaintiff made no mistake in initially suing Pickoff but not the others, his primary argument is that the *addition* of parties is simply not consistent with Rule 15(c)'s requirement of a *change* in parties, in light of the Sixth Circuit's decision in Asher and its predecessors.  The Court does not believe that the Supreme Court's decision in Krupski requires any modification of the Sixth Circuit's doctrine, for the following two reasons.

First, the focal point of the Krupski decision is clearly on the nature of "mistake" as it is used in Rule 15(c)(1)(C)(ii), not the nature of "change" in 15(c)(1)(C).  Specifically, the Court concluded that the fact that a plaintiff knows of the existence of several parties is not inconsistent with her making a "mistake" as to which party should be sued.  See Krupski 130 S.Ct. at 2493–4.  By contrast, the relevant Sixth Circuit decisions under scrutiny have concluded that the *addition* of new defendants is not consistent with Rule 15(c)(1)(C)'s requirement of a *change* in parties.  E.g., Asher, 596 F.3d at 318.  Even if Plaintiff had argued that this circuit's narrow construction of the word "change" requires a common sense reevaluation, the Court's decision in Krupski only sought to examine the meaning of "mistake" under Rule 15(c)(1)(C)(ii).  Second, the fact situation of Krupski does not suggest the inference that the Supreme Court implicitly rejected these Sixth

Circuit precedents. Therein, the plaintiff's desired amendment removed one party, Costa Cruise, and replaced it with another, Costa Crociere. Thus, the one-for-one substitution carried out was in accord with the Sixth Circuit's understanding of what kind of modification constitutes a change in parties. Moreover, a number of district courts have, while citing <u>Krupski</u>, reaffirmed the principle that adding parties is impermissible under the Sixth Circuit's interpretation of Rule 15(c). <u>E.g.</u>, <u>Wuliger v. Cannella Response TV, Inc.</u>, 2011 U.S. Dist. LEXIS 4400 at *18 (N.D. Ohio 2011); <u>Burdine v. Kaiser</u>, 2010 U.S. Dist. LEXIS 63122 at *7 (N.D. Ohio 2010).

Accordingly, and for the foregoing reasons, Plaintiff has not demonstrated that the requirements of Rule 15(c) are met as to her proposed addition of Part, Dodge and Sahiar to her suit.


<u>Conclusion</u>

In light of the foregoing, Plaintiff's Motion to Add Party Defendants/Amend Complaint Instanter (Doc. #10) is sustained as to the alterations of the facts and causes of action presented in the proposed Amended Complaint (Doc. #10-1); her motion is overruled as to the addition of the proposed new Defendants; Defendant's Objections (Doc. #20), to the Magistrate Judge's Report and Recommendations (Doc. #19) are, accordingly, sustained in part, and overruled in part; the aforesaid judicial filing is adopted in part, as supplemented herein by the Court's reasoning and citations of authority, and rejected in part.

- 27 -

Plaintiff is given leave to file within ten (10) calendar days from this date, an amended complaint in accordance with this filing, if such can be done with the strictures of Rule 11 of the Federal Rules of Civil Procedure in mind.  Following the filing of such an amended complaint, or the expiration of the time set herein for doing so, the Court will convene a scheduling conference.


March 28, 2011



_____
        WALTER HERBERT RICE, JUDGE
        UNITED STATES DISTRICT COURT


Copies to:

Counsel of Record